1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   AMERICAN NATIONAL PROPERTY AND )   Case No.: 1:20-cv-1591 AWI JLT
     CASUALTY COMPANY,                           )
12                                               )   FINDINGS AND RECOMMENDATIONS
                       Plaintiff,                )   GRANTING PLAINTIFF'S MOTION FOR
13                                               )   DEFAULT JUDGMENT
                 v.                              )
14                                               )   (Doc. 17)
     GEORGE WASHINGTON, et al.,                  )
15                                               )
                       Defendants.               )
16   _____ )

17          American National Property and Casualty Company asserts that under a homeowner's insurance

18   policy, the company was not obligated to defend George and Juanita Washington—or their business

19   Kool Line Express—in a civil action pending in Kern County Superior Court.  (*See generally* Doc. 1.)

20   Because Defendants have not responded to the allegations in the complaint, Plaintiff now seeks default

21   judgment. (Doc. 17.)

22          The Court finds the matter suitable for decision without oral argument.  Therefore, the motion is

23   taken under submission pursuant to Local Rule 230(g) and General Order 618, and the hearing date of

24   April 28, 2021 is **VACATED**.  For the following reasons, the Court recommends the motion for default

25   judgment be **GRANTED**.

26   **I.     Procedural History**

27          On October 17, 2019, an action was filed in Kern County Superior Court, Case No. BCV-19-

28   102967 "against Mr. Washington individually and against Mr. and Mrs. Washington as a married

1

1  couple doing business as Kool Line Express." (Doc. 1 at 3, ¶ 9.) American National Property and

2  Casualty Company ("ANPAC") initiated this action by filing a complaint on November 12, 2020,

3  seeking an order that the claims alleged in the underlying state court action "are not covered under any

4  of the Policies" and "[a] monetary judgment for the amount of all fees and costs that [Plaintiff] incurs

5  to defend Mr. Washington and Mrs. Washington in the Underlying Action." (*See id.* at 10.)

6  The Court issued the summons on November 24, 2020. (Doc. 4.) Tthough Defendants were

7  properly served with the summons and complaint, they failed to respond to the complaint within the

8  time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was

9  entered against the Defendants on February 2, 2021. (Docs. 12, 13.) ANPAC filed the motion for

10  default judgment now pending before the Court on March 29, 2021. (Doc. 17.) Defendants have

11  neither appeared nor opposed the motion.

12  **II.     Legal Standards Governing Default Judgment**

13  The Federal Rules of Civil Procedure govern the entry of default and default judgment. After

14  default is entered because "a party against whom a judgment for relief is sought has failed to plead or

15  otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ.

16  P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as

17  true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323

18  U.S. 1, 22 (1944). In addition, "necessary facts not contained in the pleadings, and claims which are

19  legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d

20  1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

21  Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d

22  1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-

23  ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord*

24  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

25        Factors which may be considered by courts in exercising discretion as to the entry
          of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the
26        merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the
          sum of money at stake in the action, (5) the possibility of a dispute concerning
27        material facts, (6) whether the default was due to excusable neglect, and (7) the
          strong policy underlying the Federal Rules of Civil Procedure favoring decisions on
28        the merits.

1   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default

2   judgment is disfavored.  *Id.* at 1472.

3   **III.     Factual Allegations and Evidence**

4           The Court accepts the factual assertions as true, because default has been entered against

5   Defendant.  *See Pope*, 323 U.S. at 22.  With the motion now pending, ANPAC has also presented

6   evidence, including in declaratory form and exhibits, which support the allegations in the complaint.[1]

7           On October 17, 2019, Michael Edward Keen, Jr. filed a complaint in Kern County Superior

8   Court against George Washington, individually, and the Washingtons "as married couple doing

9   business as Kool Line Express."  (Doc. 1 at 2-3, ¶ 7; *see also* Doc. 17-3 at 5.)  In the complaint. Keen

10  alleged his mother, Crystal Lynn Pearigen, was attacked and killed on June 16, 2019, by two dogs

11  after they escaped through an opening in the perimeter fence surrounding the premises of Kool Line

12  Express located at 2523 Gilmore Avenue in Bakersfield, California.  (*Id.* at 4, ¶ 10; *see also* Doc. 17-3

13  at 6.)  Keen state claims for "general negligence" and "intentional tort" on an individual basis and as

14  successor-in-interest to Pearigen.  (*Id.* at 3, ¶ 9; Doc. 17-3 at 6-8.)

15          ANPAC asserts the "dogs were owned by one or more of the Underlying Defendants and were

16  exclusively kept at [Kool Line Express] for the explicit purpose of protecting the Business Property

17  and its contents."  (Doc. 1 at 4, ¶ 11.)  In the state court action, Keen alleges the defendants "knew

18  about but failed to secure the opening in the perimeter fence, and thus the subject dogs were allowed to

19  leave and re-enter the Business Property."  (*Id.*, ¶ 12.)  Further, Keen asserts the defendants "were

20  careless in handling the subject dogs, and … knew or should have known that the dogs had a vicious

21  propensity to attack people and were of breeds that have aggressive tendencies, and that members of

22  the general public were at risk of harm from them."  (*Id.* at 13.)  Thus, Keen asserts the defendants

23

24

25          [1] Plaintiff requests that the Court take judicial notice of the complaint filed in *Michael Edward Keen, Jr., individually, and as successor-in-interest to Crystal Lynn Pearigen v. George Washington, et al.,* Case No. BCV-19-102967.  (Doc. 17-3 at 2.)  The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it

26  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The records of court proceedings cannot

27  reasonably be questioned, and judicial notice may be taken of a court's record and docket. *Mullis v. United States Bank. Ct*., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp*., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd* 645

28  F.2d 699 (9th Cir. 1981); *see also Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th. Cir. 1980).  Accordingly, the Court takes judicial notice of the filing of the complaint and claims presented.

1    "are at fault for and/or are strictly liable for Ms. Pearigen's death" and "liable for an intentional tort

2    based on his claims that they acted with conscious, knowing, willful, and/or reckless disregard for the

3    rights and safety of others." (*Id.*, ¶¶ 14-15.)

4            At the time of the incident underlying the state court complaint, the Washingtons maintained a

5    homeowners policy with ANPAC, doing business as Pacific Property and Casualty Company. (Doc. 1

6    at 5, ¶ 16.) ANPAC reports that in Homeowners Policy No. 04-X-W8066-9, the only insured property

7    was located at 3608 Tori Lorene Avenue in Bakersfield, California. (*Id.*) Plaintiff reports "ANPAC,

8    doing business as Pacific Property and Casualty Company, also issued two rental-owners policies to

9    Mr. Washington: number 04-K-34000P-6, in effect from November 20, 2018 to November 20, 2019,

10   and number 04-K-U987384, in effect from October 1, 2018 to October 1, 2019." (*Id.* at 6, ¶ 22.) The

11   Rental-Owners Policies addressed properties located at 138 Milham Drive and 2162 Normal Avenue in

12   Bakersfield, California. (*Id.*)

13           Under the Homeowners Policy, the Washingtons were provided coverage for "bodily injury

14   that an insured is legally obligated to pay resulting from a covered occurrence." (Doc. 1 at 5, ¶ 16,

15   internal quotation marks omitted.) "The Homeowners Policy contain[ed] an exclusion that states [the]

16   insurance coverage shall not apply to bodily injury 'arising out of business pursuits of any insured or

17   the rental or holding for rental of any part of any premises by an insured.'" (*Id.*, ¶ 18; *see also* Doc.

18   17-2 at 63, Section II- Exclusions, ¶ 1(b).) In addition, the Homeowners Policy indicated "coverage

19   shall not apply to bodily injury 'arising out of the use of any location which is not an insured location

20   and which is owned by or leased to any insured.'" (*Id.*, ¶ 19; *see also* Doc. 17-2 at 63, Section II-

21   Exclusions, ¶ 1(g).)

22           Under the Rental-Owners Policies, Mr. Washington was "provide[d] coverage for liability for

23   'bodily injury' and 'personal injury' caused by an 'occurrence' and which arises from the ownership,

24   maintenance, or use of the 'insured premises,' as defined by the Rental-Owners Policies." (Doc. 1 at

25   6, ¶ 22.) "In the Rental-Owners Policies the 'insured premises' are defined to mean the Rental

26   Properties, one or two family premises for which ownership or control is acquired and for which there

27   is a reported intention to insure under the policy, and the ways immediately adjoining insured

28   premises." (*Id.*, ¶ 23.)

1    "ANPAC agreed to defend [both] Mr. Washington and Mrs. Washington individually in the

2    Underlying Action under the Homeowners Policy under a reservation of rights and offered to provide

3    them with independent counsel under Civil Code § 2860." (Doc. 1 at 5, ¶ 20.) "ANPAC disclaimed

4    coverage" for Kool Line Express, which was not an insured under the Homeowners Poolicy. (*Id.* at 6,

5    ¶ 21.) In addition, ANPAC disclaimed coverage for Mr. Washington under the Rental-Owners

6    Policies. (*Id.*, ¶ 23.)

7    ANPAC now argues "there is no coverage under the Homeowners Policy for the Underlying

8    Action" for the Washingtons because (1) "[t]he Underlying Injury arose out of one or more of the

9    Underlying Defendants' business pursuits, since the subject dogs were exclusively kept at the Business

10   Property for the explicit purpose of protecting the Business Property and its contents"; and (2) "[t]he

11   Underlying Injury arose out of the use of the Business Property, which is not an insured location and

12   which is owned by or leased to one or more of the Underlying Defendants." (Doc. 1 at 8, ¶ 38.)

13   **IV.    Discussion and Analysis**

14   Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh

15   in favor of granting the motion for default judgment.

16   **A.    Prejudice to Plaintiff**

17   The first factor considers whether a plaintiff would suffer prejudice if default judgment is not

18   entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See*

19   *Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant,

20   a plaintiff has no other means by which to recover damages. *Id.*; *see also Microsoft Corp. v. Nop*, 549

21   F. Supp.2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied

22   because plaintiff will be without other recourse for recovery").

23   Because ANPAC has no other means to address its obligations under the identified policies, the

24   Court finds Plaintiff would be prejudiced if default judgment is not granted. *See Burlington Ins. Co. v.*

25   *Diamond Partners, Inc.*, 2011 WL 284490, at *3 (E.D. Cal. Jan. 25, 2011) (finding prejudice where an

26   insurance company "would be denied a judicial determination as to whether there is a duty to

27   indemnify and defend… and whether it is entitled to reimbursement for the cost of defense"); *Mesa*

28   *Underwriters Specialty Ins. Co. v. Paradise Skate, Inc.*, 2016 WL 9045622, at *3 (N.D. Cal. April 11,

2016) ("There is potential prejudice where denying default judgment would deny an insurer a judicial determination as to whether it has a duty to indemnify and defend the defendant and whether it is entitled to reimbursement of the defense costs in the underlying action."). Consequently, the Court finds this factor weighs in favor of the entry of default judgment.

**B.      Merits of Plaintiff's claims and the sufficiency of the complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's claims and the sufficiency of the complaint together. *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal. 2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at \*5 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

1.      Claim for declaratory relief

The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." 28 U.S.C. § 2201; *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1091 (9th Cir. 1992). The Declaratory Judgment Act requires that a party seeking declaratory relief must allege (1) an actual controversy (2) regarding a matter within federal subject matter jurisdiction. 28 U.S.C. § 2201(a). The Court has the discretion to determine whether to entertain an action for declaratory relief, because the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assoc. v. Rickover*, 369 U.S. 111, 112 (1962); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). A declaratory relief claim operates "prospectively," not to redress past wrongs. *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

The Ninth Circuit determined that "[d]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989). To determine whether a controversy invokes declaratory relief, the Court must determine whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and

1    reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil*

2    *Co.*, 312 U.S. 270, 273 (1941).

3            There is a controversy regarding Plaintiff's obligations under the policies issued to George and

4    Juanita Washington, and whether ANPAC has a duty to defend the Washingtons in the underlying

5    state court action.  Second, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332

6    because there is complete diversity between the parties and the amount in controversy exceeds

7    $75,000.  (*See* Doc. 1 at 2-3, ¶¶ 2-5, 7.)  Notably, declaratory relief is often sought in actions between

8    insurers and insureds to determine rights and obligations under an insurance policy. *See United States*

9    *Transp. Indem.*, 544 F.2d 393, 395 (1976).  The facts above support the requested relief, as the events

10   in the underlying action did not occur at a covered location and related to the Washingtons' business

11   pursuits.  Further, Kool Line Express was not a party covered by either the Homeowners Policy or

12   Rental-Owners Policies.

13                       2.      Claim for reimbursement of costs

14           An insurance company is "entitled to recoup costs expended in defending its insured where, as

15   here, it is later determined that it had no duty to defend." *Atain Specialty Ins. Co. v. River Heights*

16   *Condos, LLC*, 2012 WL 6589227, at *2 (E.D. Cal. Dec. 17, 2012), citing *Scottsdale Ins. Co. v. MV*

17   *Transp.*, 36 Cal.4th 643, 662 (2005).  Accordingly, because the claims in the underlying state court

18   action were not covered under the policies, Plaintiff is entitled to the reimbursement of costs related to

19   its defense of George and Juanita Washington.

20                       3.      Conclusion

21           Based upon the allegations of the complaint and supporting documentation, the Court finds

22   Plaintiff stated a cognizable claim for declaratory relief and is also reimbursement of costs.  Thus, these

23   factors support the entry of default judgment.

24           **C.      Sum of money at stake**

25           In considering this factor, the Court "must consider the amount of money at stake in relation to

26   the seriousness of Defendant's conduct."  *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, Plaintiff

27   predominately seeks declaratory relief through the motion for default judgment and indicates any

28   motion for reimbursement will be brought by separate motion.  Thus, the Court finds this factor does

1   not weigh against the entry of default judgment. *See Echelon Property & Casualty Ins. Co. v. Allstate*

2   *Med Trans LLC,* 2020 WL 3192432, at \*3 (D. Ar. June 15, 2020) ("Where the plaintiff's claim is for

3   declaratory relief rather than money damages, . . . courts have found that this factor weighs in favor of

4   granting default judgment").

5           **D.      Possibility of dispute concerning material facts**

6           There is little possibility of dispute concerning material facts because (1) based on the entry of

7   default, the Court accepts factual allegations in the Complaint as true and (2) though properly served,

8   the defendants failed to appear and defend. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra*

9   *Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a

10  well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no

11  likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh

12  against default judgment.

13          **E.      Whether default was due to excusable neglect**

14          Generally, the Court will consider whether a defendant's actions— such as failure to file an

15  answer— is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendants were served with

16  the summons and complaint on November 16, 2020. (Doc. 4.) In addition, Catherine Hall, counsel for

17  Plaintiff, reports she was contacted by Roger Lampkin, who identified himself as "an attorney

18  representing the Washingtons in connection with the instant action" in February and March 2021.

19  (Doc. 17-1 at 3-4, ¶¶ 11-13.) Thus, it is clear Defendants are aware of the suit, and it is unlikely the

20  failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v.*

21  *Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants

22  "were properly served with the Complaint, the notice of entry of default"). Accordingly, this factor

23  does not weigh against default judgment.

24          **F.      Policy disfavoring default judgment**

25          As noted above, default judgments are disfavored because "[c]ases should be decided on their

26  merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying

27  the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default

28  judgment because the Washingtons' failure to appear makes a decision on the merits impractical.

## V.      Relief Requested

Based upon the foregoing, the *Eitel* factors weigh in favor of granting default judgment, and the Court turns to the relief requested by Plaintiff.  In its Motion, Plaintiff seeks: the Court's declaration that (1) ANPAC it does not have a duty to defend George Washington, Juanita Washington, or Kool Line Express in the underlying action, (2) ANPAC may withdraw from the defense of the Washingtons in the state court action; and (3) ANPAC is entitled to reimbursement of fees and costs incurred in defending in the underlying action.  (*See generally* Doc. 17; Doc. 17-4 at 2.)  For the reasons discussed above, the Court finds the entry of default judgment is appropriate and ANPAC is entitled the requested declaratory relief.

## VI.      Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  *See Aldabe*, 616 F.2d at 1092.  Based upon the foregoing, the Court **RECOMMENDS**:

1.      Plaintiff's motion for default judgment (Doc. 17) be **GRANTED**;

2.      The Court issue judgment finding Plaintiff had no obligation under the Homeowners Policy or Rental-Owners Policy to defend George Washington, Juanita Washington, or Kool Line Express in the underlying state court action, Case No. BCV-19-102967;

3.      Plaintiff be permitted to withdraw its defense of George Washington and Juanita Washington; and

4.      Plaintiff be directed to file any motion for reimbursement of fees and costs incurred within 30 days of any order addressing these recommendations.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

    Dated:   **April 25, 2021**                **/s/ Jennifer L. Thurston**
                                                    CHIEF UNITED STATES MAGISTRATE JUDGE